IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION AT TOLEDO

| | |
|---|---|
| Kara Dodge and Tara Flores, *On behalf of themselves and those similarly situated*, Plaintiffs, v. STEPS Agency, Inc.; STEPS Provider Agency, LLC; Barry DiBiasio; and Jackie Bruce; Defendants. | Case No. 3:18-cv-1150 Judge Magistrate Judge Jury Demand Endorsed Hereon |

## CLASS AND COLLECTIVE ACTION COMPLAINT

**PRELIMINARY STATEMENT**

1. Plaintiffs Kara Dodge and Tara Flores, on behalf of themselves and all similarly-situated individuals, bring this action against Defendants STEPS Agency, Inc., STEPS Provider Agency, LLC, Barry DiBiasio, and Jackie Bruce (collectively, "Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly situated individuals with overtime wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and the Prompt Pay Act, O.R.C. § 4113.15.

2. Defendants have operated a supported living provider agency in Northwest Ohio for individuals with developmental disabilities since 2005.

3. At all relevant times, Defendants have employed home care providers to provide direct care to Defendants' clients.

4. Defendants' have been required to pay their home care provider employees overtime for hours worked in excess of 40 hours per workweek starting on January 1, 2015, but have refused to do so.

5. All of Defendants' home care providers, including Plaintiffs, are subject to the same employment policies and practices, including policies and practices with respect to overtime wages.

6. Plaintiffs bring this action on behalf of themselves and similarly situated current and former home care providers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by the Defendants.

7. Plaintiffs also bring this action on behalf of themselves and similarly situated current and former home care providers in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the OMFWSA and O.R.C. § 4113.15.

## JURISDICTION AND VENUE

8. This action is brought pursuant to the FLSA, 29 U.S.C. §201, *et seq.*, O.R.C. § 4111, *et seq.*, O.R.C. § 4113.15, and 28 U.S.C. §1331 and §1343(a)(4).

9. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, which provides for original jurisdiction of Plaintiffs' claims arising under the laws of the United States and over actions to secure equitable and other relief.

10. This Court's jurisdiction is also predicated upon 28 U.S.C. §1367 as this Class Action Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

11. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b).

## PARTIES

**Plaintiffs**

**Kara Dodge**

12. Plaintiff Kara Dodge resides in the Northern District of Ohio. Further, at all times material herein, Plaintiff worked within the boundaries of Northern District of Ohio for Defendants.

13. At all times relevant herein, Plaintiff was an "employee" of Defendants as defined in the FLSA and the OMFWSA.

14. Plaintiff has given written consent to join this action.

**Tara Flores**

15. Plaintiff Tara Flores resides in the Northern District of Ohio. Further, at all times material herein, Plaintiff worked within the boundaries of Northern District of Ohio for Defendants.

16. At all times relevant herein, Plaintiff was an "employee" of Defendants as defined in the FLSA and the OMFWSA.

17. Plaintiff has given written consent to join this action.

**Defendants**

18. Together, Defendants have employed Plaintiffs and similarly-situated home care providers at all times relevant as a single enterprise.

**STEPS Agency, Inc.**

19. Defendant STEPS Agency, Inc. is a domestic for-profit corporation, with its principle place of business in Ohio. STEPS Agency, Inc. does business as "STEPS" in the Northern District of Ohio.

20. STEPS Agency, Inc. was incorporated by Barry DiBiasio in 2011.

21. STEPS Agency, Inc. is headquartered at 2451 West State Street, Fremont, Ohio 43420.

22. STEPS Agency, Inc. is an "employer" of Plaintiff and similarly situated home care providers as that term is defined by the FLSA and OMFWSA.

23. STEPS Agency, Inc. was the corporate entity listed on Plaintiffs' pay stubs for work they completed for Defendants.

24. STEPS Agency, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all home care providers at all of its locations, including policies, practices, and procedures relating to payment of overtime wages.

25. At all relevant times, STEPS Agency, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

26. At all relevant times, STEPS Agency, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

27. STEPS Agency, Inc.'s gross revenue exceeds $500,000 per year.

**STEPS Provider Agency, LLC**

28. Defendant STEPS Provider Agency, LLC is a for-profit limited liability company, with its principal place of business in Ohio. STEPS Provider Agency, LLC does business as "STEPS" in the Northern District of Ohio.

29. STEPS Provider Agency, LLC was incorporated by Barry DiBiasio in 2006.

30. STEPS Provider Agency, LLC is headquartered at 2451 West State Street, Fremont, Ohio 43420.

31. STEPS Provider Agency, LLC is an "employer" of Plaintiff and similarly situated home care providers as that term is defined by the FLSA and OMFWSA.

32. STEPS Provider Agency, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all home care providers at all of its locations, including policies, practices, and procedures relating to payment of overtime wages.

33. At all relevant times, STEPS Provider Agency, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other practices.

34. At all relevant times, STEPS Provider Agency, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

35. STEPS Provider Agency, LLC's gross revenue exceeds $500,000 per year

**Barry DiBiasio**

36. Defendant Barry DiBiasio is the founder and owner, of STEPS Agency, Inc.

5

37. Defendant Barry DiBiasio is the CEO of STEPS Agency, Inc.

38. Defendant Barry DiBiasio is the founder and owner of STEPS Provider Agency, LLC.

39. Defendant Barry DiBiasio is the CEO of STEPS Provider Agency, LLC.

40. Upon information and belief, Mr. DiBiasio resides in Bowling Green, Ohio.

41. Mr. DiBiasio is an incorporator and authorized representative for STEPS Agency, Inc.

42. Mr. DiBiasio serves as the statutory agent for STEPS Agency, Inc.

43. Mr. DiBiasio is an incorporator and authorized representative of STEPS Provider Agency, LLC.

44. Mr. DiBiasio serves as the statutory agent for STEPS Provider Agency, LLC.

45. The STEPS website identifies Mr. DiBiasio as the Founder and CEO of STEPS.

46. At all relevant times, Mr. DiBiasio has been an "employer" of Plaintiffs and similarly situated home care providers as that term is defined by the FLSA and the OMFWSA.

47. At all relevant times, Mr. DiBiasio has been actively involved in managing the operations of STEPS Agency, Inc.

48. At all relevant times, Mr. DiBiasio has been actively involved in managing the operations of STEPS Provider Agency, LLC.

49. At all relevant times, Mr. DiBiasio has had control over Defendants' pay policies.

50. At all relevant times, Mr. DiBiasio has had power over personnel and payroll decisions at STEPS Agency, Inc.

51. At all relevant times, Mr. DiBiasio has had power over personnel and payroll decisions at STEPS Provider Agency, LLC.

52. At all relevant times, Mr. DiBiasio has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

53. At all relevant times, Mr. DiBiasio has had the power to transfer the assets and liabilities of STEPS Agency, Inc.

54. At all relevant times, Mr. DiBiasio has had the power to transfer the assets and liabilities of STEPS Provider Agency, LLC.

55. At all relevant times, Mr. DiBiasio has had the power to declare bankruptcy on behalf of STEPS Agency, Inc.

56. At all relevant times, Mr. DiBiasio has had the power to declare bankruptcy on behalf of STEPS Provider Agency, LLC.

57. At all relevant times, Mr. DiBiasio has had the power to enter into contracts on behalf of STEPS Agency, Inc.

58. At all relevant times, Mr. DiBiasio has had the power to enter into contracts on behalf of STEPS Provider Agency, LLC.

59. At all relevant times, Mr. DiBiasio has had the power to close, shut down, and/or sell STEPS Agency, Inc.

60. At all relevant times, Mr. DiBiasio has had the power to close, shut down, and/or sell STEPS Provider Agency, LLC.

**Jackie Bruce**

61. Defendant Jackie Bruce is the President of STEPS Agency, Inc.

62. Defendant Jackie Bruce is the President of STEPS Provider Agency, LLC.

63. Upon information and belief, Ms. Bruce resides in Sandusky County, Ohio.

64. The STEPS website lists Ms. Bruce as the President of STEPS.

65. At all relevant times, by virtue of her position, Ms. Bruce has been an "employer" of Plaintiffs and similarly situated home care providers as that term is defined by the FLSA and the OMFWSA

66. At all relevant times, Ms. Bruce has been actively involved in managing the operations of STEPS Agency, Inc.

67. At all relevant times, Ms. Bruce has been actively involved in managing the operations of STEPS Provider Agency, LLC.

68. At all relevant times, by virtue of her position, Ms. Bruce has had control over Defendants' pay policies.

69. At all relevant times, by virtue of her position, Ms. Bruce has had power over personnel and payroll decisions at STEPS Agency, Inc.

70. At all relevant times, by virtue of her position, Ms. Bruce has had power over personnel and payroll decisions at STEPS Provider Agency, LLC.

71. At all relevant times, by virtue of her position, Ms. Bruce has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

72. At all relevant times, by virtue of her position, Ms. Bruce has had the power to transfer the assets and liabilities of STEPS Agency, Inc.

73. At all relevant times, by virtue of her position, Ms. Bruce has had the power to transfer the assets and liabilities of STEPS Provider Agency, LLC.

74. At all relevant times, by virtue of her position, Ms. Bruce has had the power to declare bankruptcy on behalf of STEPS Agency, Inc.

75. At all relevant times, by virtue of her position, Ms. Bruce has had the power to declare bankruptcy on behalf of STEPS Provider Agency, LLC.

76. At all relevant times, by virtue of her position, Ms. Bruce has had the power to enter into contracts on behalf of STEPS Agency, Inc.

77. At all relevant times, by virtue of her position, Ms. Bruce has had the power to enter into contracts on behalf of STEPS Provider Agency, LLC.

78. At all relevant times, by virtue of her position, Ms. Bruce has had the power to close, shut down, and/or sell STEPS Agency, Inc.

79. At all relevant times, by virtue of her position, Ms. Bruce has had the power to close, shut down, and/or sell STEPS Provider Agency, LLC.

## FACTS

80. Plaintiff Dodge has worked for Defendants as a home care provider from June 2017 to approximately March.

81. Plaintiff Flores has worked for Defendants as a home care provider from January 2017 to approximately March.

82. Plaintiff Dodge's job duties include helping defendants' clients go about their daily lives—she helped them clean, prepared meals, provided transportation, administered some medications, spent time with them, and did various other tasks for Defendants' clients on an as needed basis.

83. Plaintiff Flores' job duties include helping defendants' clients go about their daily lives—she helped them clean, prepared meals, provided transportation, administered some medications, spent time with them, and did various other tasks for Defendants' clients on an as needed basis.

84. Plaintiff Dodge's regular hourly rate was $9.00 per hour for the work she completed for Defendants.

85. Plaintiff Flores' regularly hourly rate was $8.50 per hour from the beginning of her employment until June 9, 2017, when she received a raise to $9.00 per hour.

86. Plaintiffs were paid minimum wage for hours worked between 10:30 P.M. and 6:30 A.M.

87. Plaintiffs worked over 40 hours per week for Defendants during at least one workweek.

88. Plaintiff Dodge regularly worked over 80 hours per week.

89. Plaintiff Flores regularly worked over 80 hours per week.

90. Throughout their employment with Defendants, Plaintiffs were paid their regular hourly rate for all hours worked, including hours over 40 in a given workweek.

91. In February or March of 2018, Defendants held a meeting and, while Plaintiffs were in attendance, stated that it would soon begin paying overtime wages, but that regular wages would be reduced to minimum wage.

92. Subsequent to the aforementioned meeting in February or March of 2018, Defendants still failed to pay Plaintiffs overtime wages.

93. Plaintiffs are aware of other employees who also worked over 40 hours per workweek, and were also paid their regular hourly rate for all of those hours.

94. As of January 1, 2015, all home health care workers employed by third-party agencies or employers are entitled to overtime compensation at time and one half their regular hourly rate for hours worked in excess of 40 per workweek.

95. Defendants violated the FLSA by not paying Plaintiffs and similarly situated home care providers overtime as required by law after January 1, 2015. *See* 29 C.F.R. 552.109(a).

## COLLECTIVE ACTION ALLEGATIONS

96. Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former home care providers or other domestic-service workers who (1) worked for Defendants from May 18, 2015 to the date of final judgment in this matter, and (2) worked more than 40 hours in one or more workweeks (the "FLSA Collective").

97. At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective time-and-one-half overtime pay for hours worked in excess of 40 per workweek. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

98. Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiffs and the FLSA Collective.

99. Defendants are aware or should have been aware that federal law required them to pay non-exempt employees an overtime premium for hours worked over 40 per workweek.

100. Defendants' unlawful conduct has been widespread, repeated, and consistent.

101. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

102. The FLSA Collective members are readily identifiable and ascertainable.

103. For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and addresses are readily available from Defendants' records.

104. In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

105. Plaintiffs bring the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All home health care workers or domestic-service workers who (1) worked for Defendants at any time from May 18, 2015 to present in Ohio, and (2) worked more than 40 hours in one or more workweeks.

106. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

107. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records. The hours assigned and worked, the positions held, and the rates of pay for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of

notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

108. The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

109. There are more than 50 Rule 23 Class members.

110. Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

111. Plaintiffs and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay overtime wages for hours worked in excess of 40 per workweek.

112. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with OMFWSA, and O.R.C. § 4113.15.

113. Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

114. Plaintiffs and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

115. By seeking to represent the interests of the Rule 23 Class members, Plaintiffs are

exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of themselves and their co-workers.

116. Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

117. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

118. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them.

119. Upon information and belief, Defendants and other employers throughout the state violate the OMFWSA and O.R.C. § 4113.15. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a

degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

120. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

121. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

a. Whether Defendants were required to pay overtime wages to Plaintiffs and the Rule 23 class members;

b. Whether Defendants properly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 each workweek;

c. Whether Defendants failed to pay Plaintiffs and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15;

d. Whether Defendants' policy of failing to pay Plaintiffs and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

e. The nature and extent of class-wide injury and the measure of damages for those injuries.

122. In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### COUNT I
**Failure to Pay Overtime Wages – Fair Labor Standards Act**

**(On Behalf of Plaintiffs and the FLSA Collective)**

123. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

124. Plaintiffs and the FLSA Collective worked more than 40 hours in one or more workweeks.

125. Defendants did not pay Plaintiffs and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of 40 hours per workweek.

126. Since January 1, 2015, agencies employing home care providers have been required to pay them time and a half their regular hourly rate for hours worked in excess of 40 per workweek.

127. By not paying Plaintiffs and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

128. As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**COUNT II**
**Failure to Pay Overtime Wages – Ohio Minimum Fair Wage Standards Act**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

129. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

130. Plaintiffs and the Rule 23 Class worked more than 40 hours in one or more workweeks.

131. Defendants did not pay Plaintiffs and the Rule 23 Class at least one and a half times their normal hourly rate for time worked in excess of 40 hours per workweek.

132. By not paying Plaintiffs and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the OMFWSA.

133. As a result of Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid overtime wages, costs, and attorneys' fees.

## COUNT III
### Untimely Payment of Wages – O.R.C. § 4113.15
### (On Behalf of Plaintiffs and the Rule 23 Class)

134. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

135. During all relevant times, Defendant STEPS Agency, Inc. was an entity covered by the Prompt Pay Act, O.R.C. § 4113.15, and Plaintiffs and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

136. During all relevant times, Defendant STEPS Provider Agency, LLC was an entity covered by the Prompt Pay Act, O.R.C. § 4113.15, and Plaintiffs and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

137. O.R.C. § 4113.15(A) requires that Defendants pay Plaintiffs and the Rule 23 Class all wages, including unpaid overtime, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

138. Since October 2015, there has been no "dispute" as to whether home care providers have been entitled to overtime pay.

139. Plaintiffs and the Rule 23 Class's unpaid wages have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

140. In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

141. As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**WHEREFORE**, Plaintiffs Kara Dodge and Tara Flores pray for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B. Unpaid overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiffs as representative of the Rule 23 Class and counsel of record as Class Counsel;

E. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the OMFWSA, and O.R.C. § 4113.15.

  F. An award of unpaid overtime wages due under the OMFWSA.

  G. Liquidated damages under O.R.C. § 4113.15.

  H. An award of prejudgment and post-judgment interest.

  I. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

  J. Such other legal and equitable relief as the Court deems appropriate.

       Respectfully submitted,

       /s/ Andrew Kimble
       Andrew Biller (0081452)
       Andrew Kimble (0093172)
       Markovits, Stock & DeMarco, LLC
       3825 Edwards Road, Suite 650
       Cincinnati, OH 45209
       Phone (513) 651-3700
       Fax (513) 665-0219
       (*abiller@msdlegal.com*)
       (*akimble@msdlegal.com*)
       www.msdlegal.com

       *Counsel for Plaintiffs and the putative class*

## JURY DEMAND

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

       /s/ Andrew Kimble
       Andrew Kimble